UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LUZ M. ZAMBRANA,[1]          :
      Plaintiff,        :
                    :
     v.                   :     CA 06-282 M
                    :
MICHAEL J. ASTRUE,[2]        :
Commissioner,               :
Social Security Administration,  :
      Defendant.         :

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Luz M. Zambrana ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of

---

[1] Although Plaintiff spells her last name as "Zabrana" in the caption of the Complaint (Document ("Doc.") #1), it is clear from the administrative record that the correct spelling is "Zambrana."

[2] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) (2008) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ.
P. 73(b).  For the reasons set forth herein, I find that the
Commissioner's decision that Plaintiff is not disabled is
supported by substantial evidence in the record and is legally
correct.  Accordingly, based on the following analysis, I order
that Defendant's Motion for Order Affirming the Decision of the
Commissioner (Document ("Doc.") #9) ("Motion to Affirm") be
granted and that Plaintiff's Motion for Summary Judgment (Doc.
#8) ("Motion for Summary Judgment") be denied.

### Facts and Travel

Plaintiff was born in 1954 and was fifty-one years old at
the time of the hearing before the Administrative Law Judge
("ALJ").  (Record ("R.") at 16, 66, 285)  She has an eighth grade
education and past relevant work experience as a machine operator
and packer.  (R. at 16, 83, 88, 91)

Plaintiff filed applications for DIB and SSI on September
24, 2003,[3] alleging disability since December 26, 2002, due to
diabetes, anxiety, and depression.  (R. at 16, 64-68, 82, 284-87)
The applications were denied initially and on reconsideration,
(R. at 16, 48, 49, 283), and a request for a hearing before an
ALJ was timely filed, (R. at 16, 59).  A hearing was held on
October 18, 2005, at which Plaintiff, represented by counsel,
appeared and testified.  (R. at 16, 24, 29-44).  Ronald Briere,
an impartial vocational expert ("VE"), also testified.  (R. at
16, 24, 44-47)  On December 27, 2005, the ALJ issued a decision
finding that Plaintiff was not disabled within the meaning of the
Act and, therefore, not entitled to DIB or SSI.  (R. at 16-21)
Plaintiff requested review by the Appeals Council, (R. at 9,

---

[3] With regard to the application for Disability Insurance
Benefits ("DIB"), the September 24, 2003, date is a protective filing
date.  (R. at 64); see also Plaintiff's Memorandum in Support of Her
Motion for Summary Judgment ("Plaintiff's Mem.") at 2 n.1.

291), which on April 28, 2006, denied her request, (R. at 5-7),
thereby rendering ALJ's decision the final decision of the
Commissioner, (R. at 5).  Thereafter, Plaintiff filed this action
for judicial review.

## Medical Evidence

The medical evidence in the record consists of the
following: a Rhode Island Disability Determination Services
("DDS") Case Review Form dated October 28, 2003, pertaining to
Plaintiff's physical impairments, (R. at 121-22); a report of a
consultative physical examination performed by John S. Vitelli,
M.D., on November 20, 2003, (R. at 123-24); a Rhode Island DDS
Case Review form completed by Joseph F. Callahan, M.D., on
November 28, 2003, also pertaining to Plaintiff's physical
impairments, (R. at 125-26); a psychiatric report completed by
Nina B. Nizetic, M.D., based on a December 10, 2003, examination,
(R. at 127-29); a Psychiatric Review Technique form ("PRTF"), DDS
Case Review Form, and Mental Residual Functional Capacity
Assessment completed by Susan Diaz Killenberg, M.D., on January
14, 2004, (R. at 130-49); a report of a psychological examination
performed by Maria Garrido, Psy.D., on March 8, 2004, as well as
a Supplemental Questionnaire as to Residual Functional Capacity,
(R. at 150-57); additional DDS Case Review Forms dated September
28, 2004, and September 29, 2004, (R. at 209-10, 230); a Mental
Residual Functional Capacity Assessment and PRTF submitted by
Clifford Gordon, Ph.D., on September 30, 2004, (R. at 211-29);
treatment notes from the Allen Berry Health Center and
Plaintiff's primary care physician, Claudio DePrisco, M.D.,
including a Medical Report and Medical Questionnaire completed by
Dr. DePrisco, covering the periods from January 10, 2002, through
September 20, 2004, October 6, 2004, through August 11, 2005, and
August 24, 2005, through October 3, 2005, (R. at 158-208, 231-
70); and a Psychological Test Report and Supplemental

3

Questionnaire as to Residual Functional Capacity from John P. Parsons, Ph.D., (R. at 271-81).

## Issue

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[4] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426

---

[4] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

(1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[5] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[6]  20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[5] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through March 31, 2005.  (R. at 16.

[6] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2007).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

(2007).[7]  A claimant's complaints alone cannot provide a basis
for entitlement when they are not supported by medical evidence.
See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21
(1st Cir. 1986); 20 C.F.R. § 404.1528 (2007) ("Your statements
alone are not enough to establish that there is a physical or
mental impairment.").

     The Social Security regulations prescribe a five step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert,
482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5
(1st Cir. 2001).  Pursuant to that scheme, the Commissioner must
determine sequentially: (1) whether the claimant is presently
engaged in substantial gainful work activity; (2) whether she has
a severe impairment; (3) whether her impairment meets or equals
one of the Commissioner's listed impairments; (4) whether she is
able to perform her past relevant work; and (5) whether she
remains capable of performing any work within the economy.  See
20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at
any step.  See Seavey v. Barnhart, 276 F.3d at 4.  "The applicant
has the burden of production and proof at the first four steps of
the process.  If the applicant has met his or her burden at the
first four steps, the Commissioner then has the burden at Step 5
of coming forward with evidence of specific jobs in the national
economy that the applicant can still perform."  Freeman v.
Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

     Following the familiar sequential analysis, the ALJ in the

_____

[7] The Social Security Administration ("SSA") has promulgated
identical sets of regulations governing eligibility for DIB and
Supplemental Security Income "SSI").  See McDonald v. Sec'y of Health
& Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For
simplicity, the Court hereafter will cite only to one set of
regulations.  See id.

instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since her alleged onset
date, (R. at 17, 20); that Plaintiff's diabetes and depression
were severe impairments, but that they did not, either singly or
in combination, meet or equal in severity an impairment listed in
Appendix 1, Subpart P, Regulations No. 4, (id.); that Plaintiff's
allegations regarding her limitations were not totally credible,
(R. at 20); that Plaintiff retained the residual functional
capacity ("RFC") to lift and carry ten pounds on a regular basis
and twenty pounds occasionally and sit, stand, or walk for six
hours in an eight hour workday, but that she was moderately
restricted in her ability to maintain concentration and
attention, (R. at 19-20, 20-21); that Plaintiff's past relevant
work did not require the performance of work-related activities
precluded by her RFC and, therefore, did not prevent her from
returning to her past relevant work, (R. at 20-21); and that
Plaintiff was not under a disability as defined by the Act at any
time through the date of the ALJ's decision, (R. at 21).

### Errors Claimed

Plaintiff alleges that: (1) the ALJ failed to give proper
weight to the opinion of Plaintiff's treating physician in
violation of 20 C.F.R. §§ 416.927 and 416.929 and Social Security
Ruling ("SSR") 96-2p, Plaintiff's Memorandum in Support of Her
Motion for Summary Judgment ("Plaintiff's Mem.")[8] at 11; and (2)
the ALJ failed in his method and lack of findings concerning
Plaintiff's credibility, id. at 14.

---

[8] The spacing in Plaintiff's memorandum varies from single to
double, and the font varies from 12-point font to 10-point font.
Plaintiff's counsel's attention is directed to LR Cv 7(d)(1) which
requires that the text of memoranda be doubled spaced and typed in at
least 12-point font.

**Discussion**

I.   **Weight given to the opinion of Plaintiff's treating
     physician**

The ALJ declined to afford controlling weight to the opinion
of Plaintiff's treating physician, Dr. DePrisco.   (R. at 17-19)
Plaintiff argues that:

> Even if not given controlling weight, the opinions of the
> treating physician Dr. DePrisco should have been given
> substantial weight.   His opinion was fully consistent
> with the detailed testimony provided by the claimant, and
> not inconsistent with the record as a whole.   The
> decision to give Dr. DePrisco's opinion no weight and
> finding it not persuasive is illogical and erroneous.

Plaintiff's Mem. at 14.

According to 20 C.F.R. § 404.1527(d):

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be
> the medical professionals most able to provide a
> detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations.   If we find that
> a treating source's opinion of the issue(s) of the nature
> and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight.   When we do not give the treating
> source's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this
> section, as well as the factors in paragraphs (d)(3)
> through (d)(6) of this section in determining the weight
> to give the opinion.[9]

---

[9] The factors to be considered when a treating source's medical
opinion is not given controlling weight are: (1) the length of the
treatment relationship and the frequency of examination; (2) the
nature and extent of the treatment relationship; (3) the support-
ability of the opinion; (4) the consistency of the opinion with the

20 C.F.R. § 404.1527(d)(2) (2007); <u>see also</u> SSR 96-2p, 1996 WL
374188 (S.S.A.), at * 2 ("It is an error to give an opinion
controlling weight simply because it is the opinion of a treating
source if it is not well-supported by medically acceptable
clinical and laboratory diagnostic techniques or if it is
inconsistent with the other substantial evidence in the case
record."). When a treating source's opinion is not given
controlling weight, the ALJ's decision must contain specific
reasons for the weight given to the opinion. <u>See</u> 20 C.F.R. §
404.1527(d)(2) ("We will always give good reasons in our notice
of determination or decision for the weight we give your treating
source's opinion."); SSR 96-2p, 1996 WL 374188, at *5 ("[T]he
notice of the determination or decision must contain specific
reasons for the weight given to the treating source's medical
opinion, supported by the evidence in the case record, and must
be sufficiently specific to make clear to any subsequent
reviewers the weight the adjudicator gave to the treating
source's medical opinion and the reasons for that weight."). Even
if not accorded controlling weight, the treating source's opinion
"may still be entitled to deference ...." SSR 96-2p, 1996 WL
374188, at *1.

The reports on which Plaintiff relies are a September 17,
2004, Medical Report and an August 12, 2005, Medical
Questionnaire. <u>See</u> Plaintiff's Mem. at 12. In September of
2004, Dr. DePrisco opined that:

> Regarding issue of patient ability to do work related
> activities sitting/walking/standing/carrying etc[.]  I
> don't believe that she has any major physical impairment

---

record as a whole; (5) the specialization of the source; and (6) other
factors. 20 C.F.R. § 404.1527(d)(2)-(6) (2007). The "other factors"
include "any factors you or others bring to our attention or of which
we are aware, which tend to support or contradict the opinion." 20
C.F.R. § 404.1527(d)(6).

that shouldn't allow her to perform any activity
comparable to a woman of her age but her mental health
issues/problems it's [sic] the key limiting factor in my
belie[f].

(R. at 160)  In August of 2005, Dr. DePrisco rated the severity
of Plaintiff's symptoms as "moderate," (R. at 231), but indicated
that she could "[n]ot now," (R. at 232), sustain competitive
employment on a full-time, ongoing basis, (id.).

Regarding Dr. DePrisco, the ALJ stated that:

> While Dr. DePrisco (the claimant's primary care
> physician, and not a specialist in mental health) finds
> that the claimant is "severely" limited by her
> depression, his file notes do not support that
> conclusion.  He has prescribed medication, but there is
> no indication that the claimant receives any counseling
> to supplement the medication regimen, nor has she been
> referred at any time to a psychologist or
> psychiatrist.[10]   The conclusory assessments referenced
> here are inconsistent with the conclusions of the
> impartial consultative psychiatric examiner, Dr.
> Nizetic[,] or the conclusions of the DDS reviewing
> psychiatrist and/or psychologist.

(R. at 17-18)(internal citations omitted).  The ALJ continued:

> Dr. DePrisco states in a September 17, 2004[,] report
> that he does not believe the claimant has any physical
> impairment that prevents her from work.  Further, the
> undersigned notes that there are multiple notes in the
> file that state [Plaintiff] is doing well.  In March 2005
> a progress note states that the claimant is doing okay.
> In June 2005, the medical record indicates that
> [Plaintiff] feels well.  In July 2005, notes again state

---

[10] While there is no evidence in the record that Plaintiff was
ever referred to a psychologist or psychiatrist, in an office note
dated June 10, 2005, Dr. DePrisco indicated that Plaintiff had agreed
to see a counselor, (R. at 243), presumably at Dr. DePrisco's urging.
An appointment was scheduled.  (Id.)  However, there is no indication
in the record that Plaintiff kept that appointment or ever saw a
counselor.  Plaintiff testified that she was not "seeing any other
doctors or other people who [were] treating [her]," (R. at 35),
because she did not "have insurance and [Dr. DePrisco] treats [her]
because it's a clinic and it's for free," (id.).

that the claimant is doing well.  On August 4, 2005, Dr.
DePrisco's notes [sic] that the claimant was having
trouble with depression, with some evidence of
hallucinations.  The claimant's medications were adjusted
and on August 11, 2005[,] the file indicates that the
claimant was doing better, with improved sleep and no
hallucinations or suicidal ideation.

Finally, although Dr. DePrisco concludes that the
claimant is unable to sustain gainful employment, he also
states in the same report that the claimant's symptoms
are at a "moderate" level of severity.  So, although the
claimant takes multiple medications for her depression,
Dr. DePrisco's notes are not strong in relationship to a
finding of disability.  [Plaintiff] does not receive-and
has never received-psychiatric counseling or
psychological therapy.  She has never been hospitalized
for her signs and symptoms of depression and has never
required any form of crisis intervention.

(R. at 18-19)(internal citations omitted).

It is clear from the foregoing that the ALJ found Dr.
DePrisco's reports of September 17, 2004, and August 12, 2005, to
be conclusory, inconsistent with his own treatment notes, and
inconsistent with other, substantial evidence in the record.
Thus, the ALJ complied with the requirement that he give reasons
for according little weight to the opinion of Plaintiff's
treating physician.  See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p,
1996 WL 374188, at *5.

The relevant portions of Dr. DePrisco's August 12, 2005,
Medical Questionnaire are check-off boxes, (R. at 231-32), which
the Court of Appeals for the First Circuit has held are entitled
to relatively little weight, see Berrios-Lopez v. Sec'y of Health
& Human Servs., 951 F.2d 427, 431 (1st Cir.1991)(noting that
reports which contain little more than brief conclusory
statements or the mere checking of boxes are entitled to
relatively little weight); accord Barrett v. Shalala, 38 F.3d
1019, 1023 (8th Cir. 1994)("Although the opinion of the treating
physician is to be accorded a high degree of deference by the

11

ALJ, this deference should be limited if the treating physician's opinion consists only of conclusory statements."). Moreover, Dr. DePrisco opined that Plaintiff was unable to sustain competitive full-time employment, (R. at 232), while also indicating that her symptoms were "[m]oderate," (R. at 231). Although Dr. DePrisco's September 17, 2004, Medical Report contains a written statement of his opinion regarding Plaintiff's mental impairment, (R. at 160)("her mental health issues/problems it's [sic] the key limiting factor in my belie[f]"), the doctor provides no detail as to how her mental impairment would limit her ability to perform work-related activities or what work-related activities would be impacted, (id.); see also Barrett, 38 F.3d at 1023. He provided no RFC assessment. Thus, the ALJ turned to Dr. DePrisco's office notes in order to find the detail which was lacking in the Medical Report.

The ALJ stated that "there are multiple notes in the file that state [Plaintiff] is doing well." (R. at 18)  The Court finds this statement to be largely true. Although there were ups and downs, (R. at 188)(noting that Plaintiff complained of depression because she had just lost her job and was about to lose her insurance); (R. at 242)(noting that Plaintiff "appear[ed] sad"); (R. at 246)(noting that Plaintiff was having trouble with depression and characterizing Plaintiff's depression as "uncontrolled"), as well as changes in Plaintiff's medications, (R. at 192)(restarting Plaintiff on Paxil because she "felt better on Paxil but ran out and did not obtain a refill"); (R. at 187)(adding Xanax for anxiety); (R. at 173)(discontinuing Paxil and Xanax and prescribing Lexapro and Ambien); (R. at 235) (increasing dosage of Lexapro); (R. at 238)(discontinuing Ambien and putting Plaintiff back on Xanax); (R. at 246)(discontinuing Lexapro and prescribing Wellbutrin and Remeron), there are also several references in Dr. DePrisco's

12

notes to Plaintiff's depression being "stable," (R. at
163)(commenting on July 16, 2004, that Plaintiff's depression was
"stable on Lexapro"); (R. at 238)(reiterating on March 11, 2005,
that her depression was "stable"); (R. at 247-48)(indicating on
August 11, 2005, that Plaintiff was "doing much better" since
starting on the dual therapy of Wellbutrin and Remeron, that she
was sleeping better, and that she reported no hallucinations or
suicidal ideation).  The Court observes that just one day after
Dr. DePrisco's August 11, 2005, note, in which he indicated that
Plaintiff was "doing much better," (R. at 247), he opined that
Plaintiff was unable to work, (R. at 232).  The Court
additionally observes that Dr. DePrisco's last office note, dated
October 3, 2005, characterizes Plaintiff's depression as
"controlled[.]"[11]  (R. at 267)

The ALJ also stated that Dr. DePrisco's assessments were
inconsistent with those of Dr. Nizetic, who examined Plaintiff at
the request of DDS, and Drs. Diaz Killenberg and Gordon, who
reviewed the medical records for DDS.[12]  (R. at 18)  Dr. Nizetic
evaluated Plaintiff on December 10, 2003.  (R. at 127-29)  The
doctor diagnosed Plaintiff with rule out major depressive
disorder with overlapping anxiety, a history of polysubstance

---

[11] Plaintiff also told Dr. Vitelli, who performed a consultative
physical examination, that she took medication for her depression and
"feels much better."  (R. at 123)

[12] Thus, the ALJ did not "substitute [his] own opinions of an
individual's health for uncontroverted medical evidence," Nieves v.
Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985), as
Plaintiff implies, see Plaintiff's Mem. at 14, but, rather, relied on
those of Dr. Nizetic and the DDS reviewing doctors, see Arroyo v.
Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The
ALJ did not impermissibly substitute [his] lay assessment of
claimant's RFC, but supportably relied on those submitted by the
nonexamining consultant.").

abuse, and a GAF[13] of 65.[14]  Dr. Nizetic noted that Plaintiff
presented mild restriction of her daily activities and no
constriction of her interests; that her ability to relate to
other people was somewhat impaired; that she evidenced diminished
concentration, decreased psychomotor activity, and illusions;
that she was in contact with reality, disoriented as to time,
cooperative, sad, and tearful; and that, although she was capable
of managing funds without help, her life circumstances and
related mood disorder might hinder adequate functioning.  (R. at
128)  Dr. Nizetic summarized her findings as follows:

> [Plaintiff] is a 49-year-old woman, who has a history of
> alcohol and substance abuse. [She] complained of [non-
> insulin dependent diabetes mellitus].  She presented with
> anxious and depressed mood, and excessive worry.  She
> evidenced disturbed sleep, fair memory, decreased
> psychomotor activity, occasional suicidal ideations,
> feelings of worthlessness, and lack of interest in daily
> activities.    As presented her symptoms suggest a
> depressive disorder.

(R. at 129)  Dr. Nizetic's assessment is consistent with those of
Drs. Diaz Killenberg and Gordon.[15]  (R. at 130-49, 211-29)

---

[13] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'"  Langley
v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (Text Revision
4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s]
psychological, social, and occupational functioning on a hypothetical
continuum of mental health-illness."  DSM-IV-TR at 34.

[14] A GAF of 61-70 is indicative of "**[s]ome mild symptoms** (e.g.,
depressed mood and mild insomnia) **OR some difficulty in social,
occupational, or school functioning** (e.g., occasional truancy, or
theft within the household), **but generally functioning pretty well,
has some meaningful interpersonal relationships**.  Id.

[15] Dr. Diaz Killenberg reviewed the record, which then consisted
of Dr. DePrisco's office notes (although not the later reports) and
Dr. Nizetic's evaluation, in January of 2004.  (R. at 130-49)  Dr.
Diaz Killenberg completed a PRTF and mental RFC assessment on January
14, 2004.  (Id.)  Dr. Gordon's review of the record included Dr.

Both Dr. Diaz Killenberg and Dr. Gordon evaluated Plaintiff
under the categories of affective disorders and anxiety-related
disorders, (R. at 130, 216), and found Plaintiff to be no more
than moderately limited in any area on the PRTF, (R. at 140,
226).  Similarly, on the mental RFC assessments, they found
Plaintiff to be either moderately limited or not significantly
limited in all areas.  (R. at 145-46, 211-12)  Both provided
detailed, typewritten functional assessments,[16] (R. at 149, 215),
that support the ALJ's RFC assessment which included a moderate
restriction in Plaintiff's ability to maintain concentration and

---

DePrisco's office notes, Dr. Garrido's report, and, presumably, Dr.
DePrisco's September 17, 2004, Medical Report.  (R. at 211-29)   Dr.
Gordon completed a PRTF and mental RFC assessment, both dated
September 30, 2004.  (Id.)  Both doctors also provided detailed
functional capacity assessments.  (R. at 149, 215)

[16] Dr. Diaz Killenberg stated that the evidence suggested
Plaintiff was able to understand and recall simple instructions, but
might be forgetful of multistep tasks due to distractability
associated with depression and anxiety; that Plaintiff was able to
carry out simple tasks for two hour periods over an eight-hour day,
would be unrealiable carrying out complex tasks and would struggle to
sustain attention over extended periods, was likely to miss 1-3 days
of work per month due to occasional disrupted sleep and fatigue, would
not require special supervision in the workplace, could make simple
decisions, and would have sufficient work pace for tasks that were not
highly time-pressured, but would be slowed by distractability and low
energy; that Plaintiff could interact appropriately with the public,
co-workers, and supervisors; and that Plaintiff could take public
transportation to work, be aware of workplace hazards, and plan for
simple tasks, but might be slow to respond to change due to
distractability and fatigue.  (R. at 149)  In his functional
assessment, Dr. Gordon stated that Plaintiff could understand and
remember basic routine repetitive tasks, but would have difficulty
understanding steps to tasks that were complex, abstract in nature,
timed, or with many decision trees; could attend to basic routine
repetitive tasks in two hour blocks of time over an eight hour day,
but would have difficulty on tasks that required sustained
concentration skills; presented no marked or moderate limitations in
the area of interpersonal skills; and could adapt to ordinary changes
in the workplace.  (R. at 215)

attention due to depression,[17] (R. at 20).

While Plaintiff complains that Dr. DePrisco's opinion was consistent with the assessments of Drs. Garrido and Parsons, see Plaintiff's Mem. at 12, and that Dr. Nizetic's evaluation was the only one that differed, (R. at 29), "[i]t is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]," Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988); see also Perez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980)("[W]e think it was within the Secretary's province to accord greater weight to the report received from ... an internist designated by the Secretary."). Moreover, the resolution of conflicts in the evidence is the ALJ's responsibility. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) ("Conflicts in the evidence are, assuredly, for the [Commissioner]-rather than the courts-to resolve.").

The Court additionally notes that the ALJ was not required

---

[17] The ALJ incorporated this limitation into the hypothetical question put to the VE at the hearing. The ALJ asked the VE to

consider a hypothetical claimant with a residual functional capacity for light work, further limited by a requirement that the claimant have the ability to maintain attention [and] concentration sufficient to perform simple work tasks over an eight hour work day, assuming short work breaks in every two hours. With those limitations would the claimant be able to perform either of the jobs this claimant performed in the past?

(R. at 46) The VE responded affirmatively with respect to both jobs. (Id.) When the ALJ changed the exertional level to sedentary, with the same nonexertional limitation, the VE stated that Plaintiff could perform the packer job. (Id.)

to accept Dr. DePrisco's opinion that Plaintiff was unable to
"sustain competitive employment on a full-time, ongoing basis."
(R. at 232)   Section 404.1527(e) provides that:

> Opinions on some issues, such as the examples that
> follow, are not medical opinions ... but are, instead,
> opinions on issues reserved to the Commissioner because
> they are administrative findings that are dispositive of
> a case; i.e., that would direct the determination or
> decision of disability.
>> (1) Opinions that you are disabled.   We are
>> responsible for making the determination or
>> decision about whether you meet the statutory
>> definition of disability.   In so doing, we review
>> all of the medical findings and other evidence that
>> support a medical source's statement that you are
>> disabled.   A statement by a medical source that you
>> are "disabled" or "unable to work" does not mean
>> that we will determine that you are disabled.

20 C.F.R. § 404.1527(e); see also Arroyo v. Sec'y of Health &
Human Servs., 932 F.2d 82, 89 (1ˢᵗ Cir. 1991)("The ALJ was not
required to accept the conclusions of claimant's treating
physicians on the ultimate issue of disability."); Keating, 848
F.2d at 276 ("A treating physician's conclusions regarding total
disability may be rejected by the Secretary especially when, as
here, contradictory medical advisor evidence appears in the
record."); SSR 96-5p, 1996 WL 374183 (S.S.A.), at *3 ("[T]he
adjudicator is precluded from giving any special significance to
the source; e.g., giving a treating source's opinion controlling
weight, when weighing these opinions on issues reserved to the
Commissioner.").   However, such opinions are not to be
disregarded.   See SSR 96-5p, 1996 WL 374183, at *3.   ("[O]pinions
from any medical source on issues reserved to the Commissioner
must never be ignored.").   They must be evaluated using the
applicable factors in 20 C.F.R. § 404.1527(d).   See id.

    Despite Plaintiff's assertion that "[e]xcept for a cursory
mention of the [treating physician] rule, there is no application

of the six factors as set forth in 20 C.F.R. [§] 416.927,"
Plaintiff's Mem. at 13, it appears that the ALJ did consider the
relevant factors.  He noted that Dr. DePrisco was Plaintiff's
primary care physician, (R. at 17), thereby recognizing the
existence of an examining and treating relationship,[18] see 20
C.F.R. § 404.1527(d)(1), (2).  The ALJ found that the Medical
Report and Medical Questionnaire were unsupported by and
inconsistent with the record as a whole.  (R. at 17-18); see also
20 C.F.R. § 404.1527(d)(3), (4).  He observed that Dr. DePrisco
was "not a specialist in mental health ...." (R. at 17); see also
20 C.F.R. § 404.1527(d)(5).  Finally, in terms of "other
factors," 20 C.F.R. § 404.1527(d)(6), the ALJ stated that
Plaintiff "does not receive-and has never received-psychiatric
counseling or psychological therapy.  She has never been
hospitalized for her signs and symptoms of depression and has
never required any form of crisis intervention," (R. at 18-19).

The Court concludes that the ALJ complied with the
regulations pertaining to evaluation of treating physician
opinions.  He gave specific reasons for according little weight
to Dr. DePrisco's opinions regarding the severity of Plaintiff's
depression and considered the required factors.  The Court
further finds that the ALJ reasonably gave little weight to Dr.
DePrisco's opinion regarding Plaintiff's limitations because said
opinion was inconsistent both with the doctor's own treatment
notes and with other, substantial evidence in the record.
Accordingly, the Court rejects Plaintiff's first claim of error.
See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at
769, (1st Cir. )(The Court "must uphold the [Commissioner's]
findings ... if a reasonable mind, reviewing the evidence in the

---

[18] The ALJ asked Plaintiff at the hearing how often she saw Dr.
DePrisco.  (R. at 35)  She responded, "[e]very two or three months,
every six months, depending on how I feel."  (Id.)

record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original).

## II.  **The ALJ's credibility finding**

The ALJ found Plaintiff's allegations regarding her limitations not totally credible.  (R. at 20)  Plaintiff challenges both the ALJ's method in assessing Plaintiff's credibility and the adequacy of the credibility finding itself.  See Plaintiff's Mem. at 15-18.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...."  Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).  When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1.   The individual's daily activities;
2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the symptoms;
4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2007) (same).

Plaintiff notes that in evaluating a claimant's mental impairment an ALJ is also required to assess the claimant's limitations in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. <u>See</u> Plaintiff's Mem. at 15; <u>see also</u> 20 C.F.R. § 404.1520a(c)(3).

In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." <u>Id.</u> at *4. The ALJ's credibility finding is generally entitled to deference. <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.")(citing <u>DaRosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986)); <u>see also</u> <u>Yongo v. INS</u>, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); <u>Suarez v. Sec'y of Health & Human Servs.</u>, 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations ...").

As an initial matter, the Court notes that the ALJ recognized his obligation to "consider all symptoms, including

20

pain, and the extent to which these symptoms can reasonably be
accepted as consistent with the objective medical evidence and
other evidence based on the requirements of 20 CFR §§ 404.1529
and 416.929, and Social Security Ruling 96-7p." (R. at 18)  He
then summarized Plaintiff's testimony regarding her daily
activities, pain, shortness of breath, side effects of
medications, and functional limitations.[19]  (Id.)  Moreover,
Plaintiff was questioned at length at the October 18, 2005,
hearing regarding the above factors.  See Frustaglia, 829 F.2d at
195 "The ALJ thoroughly questioned the claimant regarding his
daily activities, functional restrictions, medication, prior work
record, and frequency and duration of the pain in conformity with
the guidelines set out in Avery regarding the evaluation of
subjective symptoms.")(internal citation omitted).  He asked
about her prior work, (R. at 31-33), why she felt she could no
longer work, (R. at 34), her medication and side effects thereof,
(R. at 34, 38-39), her functional limitations, (R. at 35-36, 38),
anything else she did to feel better, (R. at 39), and her daily
activities, (R. at 36-38).  Plaintiff's attorney questioned her
as well,(R. at 39-44), inquiring about how Plaintiff slept, (R.
at 39-40), how often she cried, (R. at 40), what happened when
she felt nervous, (id.), what she did when she was nervous, (R.

---

[19] The ALJ stated that:

  [Plaintiff] testified as follows: She is unable to work due to
  the side effects of medication, fatigue, shortness of breath
  and pain in her knees.  Her medications leave her tranquil and
  lax, without energy.  She gets up in the morning around 11 am
  and sits at her kitchen table.  She reads the bible throughout
  the day and spends a significant amount of time with her
  daughter.  [Plaintiff] takes public transportation.  Her
  daughter does most of the claimant's shopping and meal
  preparation.  She uses Tylenol for her knee pain.  She does
  not sleep well and cannot concentrate for long periods of
  time.

(R. at 18)

at 41), whether she had difficulty focusing, (R. at 42), and whether being in one place for a long time made her nervous, (R. at 43-44).  Thus, although the ALJ's discussion of the required factors in his decision is brief, the Court finds that the factors were adequately considered.  See Frustaglia, 829 F.2d at 195 ("Although more express findings, regarding ... pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence.").

The same is true with reference to the broad areas of functioning.  The ALJ again recognized the need to assess the four areas of functioning.  (R. at 19)  (id.)  He found that "[b]ased on review of the entire record ... the claimant experiences 'mild' limitation in activities of daily living; 'mild' limitation in social functioning; 'moderate' limitation in concentration/persistence/pace; and 'no' episodes of decompensation of extended duration."  (Id.)  While the ALJ's summary of his findings in these areas is brief, the ALJ had addressed several areas elsewhere in his decision.  As noted previously, the ALJ summarized Plaintiff's testimony regarding her daily activities.  (R. at 18)  Touching on both Plaintiff's daily activities and social functioning, he also observed that "[w]hile the claimant testified to a limited range of daily activities, the file shows she has been able to care for a son that was involved in an automobile accident, attend church regularly, and interact well with others," (R. at 19)(internal citation omitted).  As for concentration, persistence, or pace, the ALJ stated that Plaintiff's "medical condition has resulted in symptoms that include fatigue, reduced concentration and reduced attention."  (R. at 17)  Therefore, the Court concludes that the brevity of the ALJ's summary regarding the four broad areas of functioning does not require remand.

Turning to the ALJ's credibility finding itself, Plaintiff argues that:

> The ALJ finds the severity statements of the plaintiff to be "not credible" because: "the file shows she has been able to care for a son that was in an automobile accident, attend church regularly, and interact well with others...[.] There is evidence of non-compliance with treatment suggestions.  The claimant has not sought counseling services for her depression.  Her diabetes is well controlled with medication." This simple conclusory statement does not comply with the regulations and rulings for the nature of assessment required, and ignores completely all the other statements of the examining sources and of the plaintiff herself at the hearing.

Plaintiff's Mem. at 15 (first alteration in original)(internal citation omitted).  However, that is not the only statement the ALJ made regarding Plaintiff's credibility.  After summarizing her testimony, the ALJ observed that "[r]eview of the record as a whole ... does not support a finding of the degree of severity the claimant asserts, or a degree of severity which would preclude all work." (R. at 18)  The ALJ additionally noted that Plaintiff was "not persuasive when she alleges that her impairments prevent her from work." (R. at 19)  Significantly, the ALJ also stated that:

> Finally, it is noted that the claimant's date of alleged onset of disability (December 26, 2002) corresponds with the first work day after her last day of work as a foot press operator for her last employer.  On inquiry at hearing, however, she acknowledged that her job did not end because of any physical or mental impairment, but because her employer went out of business.  There is no suggestion that she missed any work because of her impairments.  Moreover, following her lay-off, she collected unemployment insurance compensation for approximately one year (testimony): A condition of eligibility for these benefits is an acknowledgment by the claimant (/recipient) that she is ready, able, and available for work. Both the circumstances attending the end of the claimant's last employment and her subsequent

> application for and receipt of unemployment benefits
> undercuts [sic] the credibility of the claimant regarding
> her disability at that time, and generally.

(R. at 19)(footnote omitted).

The ALJ gave multiple reasons for finding Plaintiff's allegations not totally credible.  He focused on the fact that her ability to take care of her son, go to church, and interact with others was inconsistent with a total inability to work, that she was noncompliant with her medication regimen, that she had not sought treatment, other than medication, for her depression, that her diabetes was well-controlled by medication, that her statements were inconsistent with the record as a whole, that she did not stop working because of her alleged disability but, rather, because her employer went out of business, and that, thereafter, she collected unemployment benefits for a year, certifying regularly that she was ready, able, and available for work.  (Id.)  It is clear that the ALJ complied with the requirement that he "make specific findings as to the relevant evidence he considered in determining to disbelieve [Plaintiff]." DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); see also Bazile v. Apfel, 113 F.Supp.2d 181, 187 (D. Mass. 2000)(citing DaRosa); SSR 96-7p, 1996 WL 374186, at *4 ("The determination or decision must contain specific reasons for the finding on credibility ....").

Plaintiff argues that "the ALJ makes no mention of the fact that, at the time of the plaintiff's hearing, the plaintiff's son no longer lived with her,[20] [she] attended church only once

---

[20] Regarding Plaintiff's statement that at the time of the hearing in October of 2005 Plaintiff's son no longer lived with her, see Plaintiff's Mem. at 16, the Court notes that Plaintiff has alleged disability since December of 2002, (R. at 66).  Thus, even if not currently valid, the ALJ's reliance on the fact that Plaintiff was able to care for her son was valid for part of the relevant period.

weekly and testified that she could not get medical treatment
other than with Dr. DePrisco because she did not have medical
insurance and Dr. DePrisco's care was free."  Plaintiff's Mem. at
16 (internal citations omitted).  Even accepting Plaintiff's
explanations as true, the other reasons given by the ALJ remain
valid.

For example, regarding noncompliance, Dr. DePrisco noted in
his September 2004 Medical Report that he had not been able to
perform a physical examination of Plaintiff and that "a lot of
[his] struggling has been [with] compliance."  (R. at 160) He
also stated that Plaintiff was "totally NONCOMPLIANT with
suggested treatment ...," (id.), with suggested treatment for
depression, (id.).  Dr. DePrisco's office notes indicate that
Plaintiff missed appointments, that she did not bring her
medications and glucometry booklet to appointments as directed,
that she did not always take her medications as prescribed, and
that she did not follow up on referrals.[21]  (R. at 35-36, 179,
183, 189, 190, 191, 192, 242, 243, 246, 267)  On July 16, 2006,
Dr. DePrisco observed that Plaintiff was "NONCOMPLIANT[.]" (R. at
163)  Therefore, the Court concludes that the ALJ's statement
regarding noncompliance finds support in the record.

In addition, Dr. DePrisco stated that he did not believe
that Plaintiff's physical impairment would prevent her from
performing work-related activities.  (R. at 160)  This assessment
is consistent with Dr. Vitelli's notation that Plaintiff "seems
to be well controlled on her medications that she is taking," (R.
at 124), and "should have no problems with sitting, standing,
walking, lifting, carrying, or handling objects," (id.), and with

---

[21] Dr. DePrisco's office notes reflect that Plaintiff stated that
the reason for Plaintiff's refusal to see specialists and/or other
providers was lack of money.  (R. at 160, 179); see also Plaintiff's
Mem. at 5, 16.

Plaintiff's counsel's argument at the October 18, 2005, hearing
that Plaintiff was "disabled as a result of her psychiatric
impairments and ... she also has additional medical problems,
particularly the one with her knee, which does limit her ability
to ambulate," (R. at 29).  Accordingly, the Court finds no fault
with the ALJ's statement that Plaintiff's "diabetes is well
controlled with medication."  (R. at 19)

Regarding inconsistencies, SSR 96-7p directs the ALJ to
consider the consistency of Plaintiff's statements with other
information in the record.  SSR 96-7p, 1996 WL 374186, at *5
("One strong indication of the credibility of an individual's
statements is their consistency, both internally and with other
information in the case record.").  "The credibility
determination by the ALJ, who observed the claimant, evaluated
h[er] demeanor, and considered how that testimony fit in with the
rest of the evidence, is entitled to deference, especially when
supported by specific findings." Frustaglia, 829 F.2d at 195.
The Court has reviewed the entire record and finds that the ALJ's
statement that "the record as a whole ... does not support a
finding of the degree of severity the claimant asserts, or a
degree of severity which would preclude all work," (R. at 18), is
supported by substantial evidence.

Moreover, Plaintiff testified that she did not stop working
because of her alleged disability but, rather, because the
company which employed her closed.  (R. at 33)  She further
testified that she collected unemployment benefits for
approximately a year.  (Id.)  These facts were justifiably
considered by the ALJ in determining Plaintiff's credibility.
See Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)
(affirming decision where one reason for disbelieving claimant
was fact that work stoppage was not caused by claimant's medical
problems); see also id. at 1024 ("[I]n order to be eligible for

unemployment benefits, [the claimant] was required to sign
documents stating that he was capable of working and seeking
work.  This statement is clearly inconsistent with [his] claim of
disability during the same period.  The ALJ assessed [the
claimant's] credibility, and the resulting conclusion, that [his]
claims lacked credibility, is supported by substantial
evidence."); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)
(affirming decision and noting that "[c]laimant quit work of her
own volition rather than upon the advice of doctors"); Perez v.
Sec'y of Health & Human Servs., 622 F.2d 1, 3 (1st Cir. 1980)
("[W]e are reluctant to say that a claimant's decision to hold
himself out as able to work for the purpose of receiving
unemployment benefits may never be considered on the issue of
disability.").

The Court concludes that the ALJ properly evaluated
Plaintiff's credibility and that his determination that her
allegations regarding her limitations were not totally credible
is supported by substantial evidence in the record.  Accordingly,
the Court rejects Plaintiff's second claim of error.

### Summary

The Court finds that Plaintiff's challenges to the ALJ's
evaluation of the opinion of Plaintiff's treating physician and
assessment of Plaintiff's credibility are without merit.  The
Court further finds that the ALJ's decision is supported by
substantial evidence in the record.

### Conclusion

The ALJ's determination that Plaintiff was not disabled
within the meaning of the Act, as amended, is supported by
substantial evidence in the record and is free of legal error.
Accordingly, I order that Defendant's Motion to Affirm be granted
and that Plaintiff's Motion for Summary Judgment be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 28, 2008