UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LUZ M. ZAMBRANA,[1] Plaintiff, | : | |
| v. | : | CA 06-282 M |
| MICHAEL J. ASTRUE,[2] Commissioner, Social Security Administration, Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Luz M. Zambrana ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of

---

[1] Although Plaintiff spells her last name as "Zabrana" in the caption of the Complaint (Document ("Doc.") #1), it is clear from the administrative record that the correct spelling is "Zambrana."

[2] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) (2008) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I order that Defendant's Motion for Order Affirming the Decision of the Commissioner (Document ("Doc.") #9) ("Motion to Affirm") be granted and that Plaintiff's Motion for Summary Judgment (Doc. #8) ("Motion for Summary Judgment") be denied.

**Facts and Travel**

Plaintiff was born in 1954 and was fifty-one years old at the time of the hearing before the Administrative Law Judge ("ALJ"). (Record ("R.") at 16, 66, 285) She has an eighth grade education and past relevant work experience as a machine operator and packer. (R. at 16, 83, 88, 91)

Plaintiff filed applications for DIB and SSI on September 24, 2003,[3] alleging disability since December 26, 2002, due to diabetes, anxiety, and depression. (R. at 16, 64-68, 82, 284-87) The applications were denied initially and on reconsideration, (R. at 16, 48, 49, 283), and a request for a hearing before an ALJ was timely filed, (R. at 16, 59). A hearing was held on October 18, 2005, at which Plaintiff, represented by counsel, appeared and testified. (R. at 16, 24, 29-44). Ronald Briere, an impartial vocational expert ("VE"), also testified. (R. at 16, 24, 44-47) On December 27, 2005, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act and, therefore, not entitled to DIB or SSI. (R. at 16-21) Plaintiff requested review by the Appeals Council, (R. at 9,

[3] With regard to the application for Disability Insurance Benefits ("DIB"), the September 24, 2003, date is a protective filing date. (R. at 64); see also Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Plaintiff's Mem.") at 2 n.1.

291), which on April 28, 2006, denied her request, (R. at 5-7), thereby rendering ALJ's decision the final decision of the Commissioner, (R. at 5). Thereafter, Plaintiff filed this action for judicial review.

**Medical Evidence**

The medical evidence in the record consists of the following: a Rhode Island Disability Determination Services ("DDS") Case Review Form dated October 28, 2003, pertaining to Plaintiff's physical impairments, (R. at 121-22); a report of a consultative physical examination performed by John S. Vitelli, M.D., on November 20, 2003, (R. at 123-24); a Rhode Island DDS Case Review form completed by Joseph F. Callahan, M.D., on November 28, 2003, also pertaining to Plaintiff's physical impairments, (R. at 125-26); a psychiatric report completed by Nina B. Nizetic, M.D., based on a December 10, 2003, examination, (R. at 127-29); a Psychiatric Review Technique form ("PRTF"), DDS Case Review Form, and Mental Residual Functional Capacity Assessment completed by Susan Diaz Killenberg, M.D., on January 14, 2004, (R. at 130-49); a report of a psychological examination performed by Maria Garrido, Psy.D., on March 8, 2004, as well as a Supplemental Questionnaire as to Residual Functional Capacity, (R. at 150-57); additional DDS Case Review Forms dated September 28, 2004, and September 29, 2004, (R. at 209-10, 230); a Mental Residual Functional Capacity Assessment and PRTF submitted by Clifford Gordon, Ph.D., on September 30, 2004, (R. at 211-29); treatment notes from the Allen Berry Health Center and Plaintiff's primary care physician, Claudio DePrisco, M.D., including a Medical Report and Medical Questionnaire completed by Dr. DePrisco, covering the periods from January 10, 2002, through September 20, 2004, October 6, 2004, through August ll, 2005, and August 24, 2005, through October 3, 2005, (R. at 158-208, 231-70); and a Psychological Test Report and Supplemental

Questionnaire as to Residual Functional Capacity from John P. Parsons, Ph.D., (R. at 271-81).

## Issue

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[4] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426

---

[4] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

(1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[5] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[6] 20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[5] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through March 31, 2005. (R. at 16.

[6] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

(2007).[7] A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528 (2007) ("Your statements alone are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the

[7] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and Supplemental Security Income "SSI"). See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite only to one set of regulations. See id.

instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, (R. at 17, 20); that Plaintiff's diabetes and depression were severe impairments, but that they did not, either singly or in combination, meet or equal in severity an impairment listed in Appendix 1, Subpart P, Regulations No. 4, (id.); that Plaintiff's allegations regarding her limitations were not totally credible, (R. at 20); that Plaintiff retained the residual functional capacity ("RFC") to lift and carry ten pounds on a regular basis and twenty pounds occasionally and sit, stand, or walk for six hours in an eight hour workday, but that she was moderately restricted in her ability to maintain concentration and attention, (R. at 19-20, 20-21); that Plaintiff's past relevant work did not require the performance of work-related activities precluded by her RFC and, therefore, did not prevent her from returning to her past relevant work, (R. at 20-21); and that Plaintiff was not under a disability as defined by the Act at any time through the date of the ALJ's decision, (R. at 21).

**Errors Claimed**

Plaintiff alleges that: (1) the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician in violation of 20 C.F.R. §§ 416.927 and 416.929 and Social Security Ruling ("SSR") 96-2p, Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Plaintiff's Mem.")[8] at 11; and (2) the ALJ failed in his method and lack of findings concerning Plaintiff's credibility, id. at 14.

---

[8] The spacing in Plaintiff's memorandum varies from single to double, and the font varies from 12-point font to 10-point font. Plaintiff's counsel's attention is directed to LR Cv 7(d)(1) which requires that the text of memoranda be doubled spaced and typed in at least 12-point font.

## Discussion

### I. Weight given to the opinion of Plaintiff's treating physician

The ALJ declined to afford controlling weight to the opinion of Plaintiff's treating physician, Dr. DePrisco. (R. at 17-19) Plaintiff argues that:

> Even if not given controlling weight, the opinions of the treating physician Dr. DePrisco should have been given substantial weight. His opinion was fully consistent with the detailed testimony provided by the claimant, and not inconsistent with the record as a whole. The decision to give Dr. DePrisco's opinion no weight and finding it not persuasive is illogical and erroneous.

Plaintiff's Mem. at 14.

According to 20 C.F.R. § 404.1527(d):

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion of the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.[9]

---

[9] The factors to be considered when a treating source's medical opinion is not given controlling weight are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the support-ability of the opinion; (4) the consistency of the opinion with the

20 C.F.R. § 404.1527(d)(2) (2007); see also SSR 96-2p, 1996 WL 374188 (S.S.A.), at * 2 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."). When a treating source's opinion is not given controlling weight, the ALJ's decision must contain specific reasons for the weight given to the opinion. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p, 1996 WL 374188, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Even if not accorded controlling weight, the treating source's opinion "may still be entitled to deference ...." SSR 96-2p, 1996 WL 374188, at *1.

The reports on which Plaintiff relies are a September 17, 2004, Medical Report and an August 12, 2005, Medical Questionnaire. See Plaintiff's Mem. at 12. In September of 2004, Dr. DePrisco opined that:

> Regarding issue of patient ability to do work related activities sitting/walking/standing/carrying etc[.] I don't believe that she has any major physical impairment

---

record as a whole; (5) the specialization of the source; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6) (2007). The "other factors" include "any factors you or others bring to our attention or of which we are aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(6).

> that shouldn't allow her to perform any activity comparable to a woman of her age but her mental health issues/problems it's [sic] the key limiting factor in my belie[f].

(R. at 160) In August of 2005, Dr. DePrisco rated the severity of Plaintiff's symptoms as "moderate," (R. at 231), but indicated that she could "[n]ot now," (R. at 232), sustain competitive employment on a full-time, ongoing basis, (id.).

Regarding Dr. DePrisco, the ALJ stated that:

> While Dr. DePrisco (the claimant's primary care physician, and not a specialist in mental health) finds that the claimant is "severely" limited by her depression, his file notes do not support that conclusion. He has prescribed medication, but there is no indication that the claimant receives any counseling to supplement the medication regimen, nor has she been referred at any time to a psychologist or psychiatrist.[10] The conclusory assessments referenced here are inconsistent with the conclusions of the impartial consultative psychiatric examiner, Dr. Nizetic[,] or the conclusions of the DDS reviewing psychiatrist and/or psychologist.

(R. at 17-18)(internal citations omitted). The ALJ continued:

> Dr. DePrisco states in a September 17, 2004[,] report that he does not believe the claimant has any physical impairment that prevents her from work. Further, the undersigned notes that there are multiple notes in the file that state [Plaintiff] is doing well. In March 2005 a progress note states that the claimant is doing okay. In June 2005, the medical record indicates that [Plaintiff] feels well. In July 2005, notes again state

---

[10] While there is no evidence in the record that Plaintiff was ever referred to a psychologist or psychiatrist, in an office note dated June 10, 2005, Dr. DePrisco indicated that Plaintiff had agreed to see a counselor, (R. at 243), presumably at Dr. DePrisco's urging. An appointment was scheduled. (Id.) However, there is no indication in the record that Plaintiff kept that appointment or ever saw a counselor. Plaintiff testified that she was not "seeing any other doctors or other people who [were] treating [her]," (R. at 35), because she did not "have insurance and [Dr. DePrisco] treats [her] because it's a clinic and it's for free," (id.).

> that the claimant is doing well. On August 4, 2005, Dr. DePrisco's notes [sic] that the claimant was having trouble with depression, with some evidence of hallucinations. The claimant's medications were adjusted and on August 11, 2005[,] the file indicates that the claimant was doing better, with improved sleep and no hallucinations or suicidal ideation.
>
> Finally, although Dr. DePrisco concludes that the claimant is unable to sustain gainful employment, he also states in the same report that the claimant's symptoms are at a "moderate" level of severity. So, although the claimant takes multiple medications for her depression, Dr. DePrisco's notes are not strong in relationship to a finding of disability. [Plaintiff] does not receive—and has never received—psychiatric counseling or psychological therapy. She has never been hospitalized for her signs and symptoms of depression and has never required any form of crisis intervention.

(R. at 18-19)(internal citations omitted).

It is clear from the foregoing that the ALJ found Dr. DePrisco's reports of September 17, 2004, and August 12, 2005, to be conclusory, inconsistent with his own treatment notes, and inconsistent with other, substantial evidence in the record. Thus, the ALJ complied with the requirement that he give reasons for according little weight to the opinion of Plaintiff's treating physician. See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188, at *5.

The relevant portions of Dr. DePrisco's August 12, 2005, Medical Questionnaire are check-off boxes, (R. at 231-32), which the Court of Appeals for the First Circuit has held are entitled to relatively little weight, see Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir.1991)(noting that reports which contain little more than brief conclusory statements or the mere checking of boxes are entitled to relatively little weight); accord Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)("Although the opinion of the treating physician is to be accorded a high degree of deference by the

ALJ, this deference should be limited if the treating physician's opinion consists only of conclusory statements."). Moreover, Dr. DePrisco opined that Plaintiff was unable to sustain competitive full-time employment, (R. at 232), while also indicating that her symptoms were "[m]oderate," (R. at 231). Although Dr. DePrisco's September 17, 2004, Medical Report contains a written statement of his opinion regarding Plaintiff's mental impairment, (R. at 160)("her mental health issues/problems it's [sic] the key limiting factor in my belie[f]"), the doctor provides no detail as to how her mental impairment would limit her ability to perform work-related activities or what work-related activities would be impacted, (id.); see also Barrett, 38 F.3d at 1023. He provided no RFC assessment. Thus, the ALJ turned to Dr. DePrisco's office notes in order to find the detail which was lacking in the Medical Report.

The ALJ stated that "there are multiple notes in the file that state [Plaintiff] is doing well." (R. at 18) The Court finds this statement to be largely true. Although there were ups and downs, (R. at 188)(noting that Plaintiff complained of depression because she had just lost her job and was about to lose her insurance); (R. at 242)(noting that Plaintiff "appear[ed] sad"); (R. at 246)(noting that Plaintiff was having trouble with depression and characterizing Plaintiff's depression as "uncontrolled"), as well as changes in Plaintiff's medications, (R. at 192)(restarting Plaintiff on Paxil because she "felt better on Paxil but ran out and did not obtain a refill"); (R. at 187)(adding Xanax for anxiety); (R. at 173)(discontinuing Paxil and Xanax and prescribing Lexapro and Ambien); (R. at 235) (increasing dosage of Lexapro); (R. at 238)(discontinuing Ambien and putting Plaintiff back on Xanax); (R. at 246)(discontinuing Lexapro and prescribing Wellbutrin and Remeron), there are also several references in Dr. DePrisco's

notes to Plaintiff's depression being "stable," (R. at 163)(commenting on July 16, 2004, that Plaintiff's depression was "stable on Lexapro"); (R. at 238)(reiterating on March 11, 2005, that her depression was "stable"); (R. at 247-48)(indicating on August 11, 2005, that Plaintiff was "doing much better" since starting on the dual therapy of Wellbutrin and Remeron, that she was sleeping better, and that she reported no hallucinations or suicidal ideation). The Court observes that just one day after Dr. DePrisco's August 11, 2005, note, in which he indicated that Plaintiff was "doing much better," (R. at 247), he opined that Plaintiff was unable to work, (R. at 232). The Court additionally observes that Dr. DePrisco's last office note, dated October 3, 2005, characterizes Plaintiff's depression as "controlled[.]"[11] (R. at 267)

The ALJ also stated that Dr. DePrisco's assessments were inconsistent with those of Dr. Nizetic, who examined Plaintiff at the request of DDS, and Drs. Diaz Killenberg and Gordon, who reviewed the medical records for DDS.[12] (R. at 18) Dr. Nizetic evaluated Plaintiff on December 10, 2003. (R. at 127-29) The doctor diagnosed Plaintiff with rule out major depressive disorder with overlapping anxiety, a history of polysubstance

[11] Plaintiff also told Dr. Vitelli, who performed a consultative physical examination, that she took medication for her depression and "feels much better." (R. at 123)

[12] Thus, the ALJ did not "substitute [his] own opinions of an individual's health for uncontroverted medical evidence," Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985), as Plaintiff implies, see Plaintiff's Mem. at 14, but, rather, relied on those of Dr. Nizetic and the DDS reviewing doctors, see Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ did not impermissibly substitute [his] lay assessment of claimant's RFC, but supportably relied on those submitted by the nonexamining consultant.").

abuse, and a GAF[13] of 65.[14] Dr. Nizetic noted that Plaintiff presented mild restriction of her daily activities and no constriction of her interests; that her ability to relate to other people was somewhat impaired; that she evidenced diminished concentration, decreased psychomotor activity, and illusions; that she was in contact with reality, disoriented as to time, cooperative, sad, and tearful; and that, although she was capable of managing funds without help, her life circumstances and related mood disorder might hinder adequate functioning. (R. at 128) Dr. Nizetic summarized her findings as follows:

> [Plaintiff] is a 49-year-old woman, who has a history of alcohol and substance abuse. [She] complained of [non-insulin dependent diabetes mellitus]. She presented with anxious and depressed mood, and excessive worry. She evidenced disturbed sleep, fair memory, decreased psychomotor activity, occasional suicidal ideations, feelings of worthlessness, and lack of interest in daily activities. As presented her symptoms suggest a depressive disorder.

(R. at 129) Dr. Nizetic's assessment is consistent with those of Drs. Diaz Killenberg and Gordon.[15] (R. at 130-49, 211-29)

---

[13] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32). The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34.

[14] A GAF of 61-70 is indicative of "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household)**, but generally functioning pretty well, has some meaningful interpersonal relationships.** Id.

[15] Dr. Diaz Killenberg reviewed the record, which then consisted of Dr. DePrisco's office notes (although not the later reports) and Dr. Nizetic's evaluation, in January of 2004. (R. at 130-49) Dr. Diaz Killenberg completed a PRTF and mental RFC assessment on January 14, 2004. (Id.) Dr. Gordon's review of the record included Dr.

Both Dr. Diaz Killenberg and Dr. Gordon evaluated Plaintiff under the categories of affective disorders and anxiety-related disorders, (R. at 130, 216), and found Plaintiff to be no more than moderately limited in any area on the PRTF, (R. at 140, 226). Similarly, on the mental RFC assessments, they found Plaintiff to be either moderately limited or not significantly limited in all areas. (R. at 145-46, 211-12) Both provided detailed, typewritten functional assessments,[16] (R. at 149, 215), that support the ALJ's RFC assessment which included a moderate restriction in Plaintiff's ability to maintain concentration and

---

DePrisco's office notes, Dr. Garrido's report, and, presumably, Dr. DePrisco's September 17, 2004, Medical Report. (R. at 211-29) Dr. Gordon completed a PRTF and mental RFC assessment, both dated September 30, 2004. (Id.) Both doctors also provided detailed functional capacity assessments. (R. at 149, 215)

[16] Dr. Diaz Killenberg stated that the evidence suggested Plaintiff was able to understand and recall simple instructions, but might be forgetful of multistep tasks due to distractability associated with depression and anxiety; that Plaintiff was able to carry out simple tasks for two hour periods over an eight-hour day, would be unrealiable carrying out complex tasks and would struggle to sustain attention over extended periods, was likely to miss 1-3 days of work per month due to occasional disrupted sleep and fatigue, would not require special supervision in the workplace, could make simple decisions, and would have sufficient work pace for tasks that were not highly time-pressured, but would be slowed by distractability and low energy; that Plaintiff could interact appropriately with the public, co-workers, and supervisors; and that Plaintiff could take public transportation to work, be aware of workplace hazards, and plan for simple tasks, but might be slow to respond to change due to distractability and fatigue. (R. at 149) In his functional assessment, Dr. Gordon stated that Plaintiff could understand and remember basic routine repetitive tasks, but would have difficulty understanding steps to tasks that were complex, abstract in nature, timed, or with many decision trees; could attend to basic routine repetitive tasks in two hour blocks of time over an eight hour day, but would have difficulty on tasks that required sustained concentration skills; presented no marked or moderate limitations in the area of interpersonal skills; and could adapt to ordinary changes in the workplace. (R. at 215)

attention due to depression,[17] (R. at 20).

While Plaintiff complains that Dr. DePrisco's opinion was consistent with the assessments of Drs. Garrido and Parsons, see Plaintiff's Mem. at 12, and that Dr. Nizetic's evaluation was the only one that differed, (R. at 29), "[i]t is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]," Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988); see also Perez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980)("[W]e think it was within the Secretary's province to accord greater weight to the report received from ... an internist designated by the Secretary."). Moreover, the resolution of conflicts in the evidence is the ALJ's responsibility. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) ("Conflicts in the evidence are, assuredly, for the [Commissioner]-rather than the courts-to resolve.").

The Court additionally notes that the ALJ was not required

---

[17] The ALJ incorporated this limitation into the hypothetical question put to the VE at the hearing. The ALJ asked the VE to

> consider a hypothetical claimant with a residual functional capacity for light work, further limited by a requirement that the claimant have the ability to maintain attention [and] concentration sufficient to perform simple work tasks over an eight hour work day, assuming short work breaks in every two hours. With those limitations would the claimant be able to perform either of the jobs this claimant performed in the past?

(R. at 46) The VE responded affirmatively with respect to both jobs. (Id.) When the ALJ changed the exertional level to sedentary, with the same nonexertional limitation, the VE stated that Plaintiff could perform the packer job. (Id.)

to accept Dr. DePrisco's opinion that Plaintiff was unable to "sustain competitive employment on a full-time, ongoing basis." (R. at 232) Section 404.1527(e) provides that:

> Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> > (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(e); see also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."); Keating, 848 F.2d at 276 ("A treating physician's conclusions regarding total disability may be rejected by the Secretary especially when, as here, contradictory medical advisor evidence appears in the record."); SSR 96-5p, 1996 WL 374183 (S.S.A.), at *3 ("[T]he adjudicator is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner."). However, such opinions are not to be disregarded. See SSR 96-5p, 1996 WL 374183, at *3. ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."). They must be evaluated using the applicable factors in 20 C.F.R. § 404.1527(d). See id.

Despite Plaintiff's assertion that "[e]xcept for a cursory mention of the [treating physician] rule, there is no application

of the six factors as set forth in 20 C.F.R. [§] 416.927," Plaintiff's Mem. at 13, it appears that the ALJ did consider the relevant factors. He noted that Dr. DePrisco was Plaintiff's primary care physician, (R. at 17), thereby recognizing the existence of an examining and treating relationship,[18] see 20 C.F.R. § 404.1527(d)(1), (2). The ALJ found that the Medical Report and Medical Questionnaire were unsupported by and inconsistent with the record as a whole. (R. at 17-18); see also 20 C.F.R. § 404.1527(d)(3), (4). He observed that Dr. DePrisco was "not a specialist in mental health ...." (R. at 17); see also 20 C.F.R. § 404.1527(d)(5). Finally, in terms of "other factors," 20 C.F.R. § 404.1527(d)(6), the ALJ stated that Plaintiff "does not receive-and has never received-psychiatric counseling or psychological therapy. She has never been hospitalized for her signs and symptoms of depression and has never required any form of crisis intervention," (R. at 18-19).

The Court concludes that the ALJ complied with the regulations pertaining to evaluation of treating physician opinions. He gave specific reasons for according little weight to Dr. DePrisco's opinions regarding the severity of Plaintiff's depression and considered the required factors. The Court further finds that the ALJ reasonably gave little weight to Dr. DePrisco's opinion regarding Plaintiff's limitations because said opinion was inconsistent both with the doctor's own treatment notes and with other, substantial evidence in the record. Accordingly, the Court rejects Plaintiff's first claim of error. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769, (1st Cir. )(The Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the

---

[18] The ALJ asked Plaintiff at the hearing how often she saw Dr. DePrisco. (R. at 35) She responded, "[e]very two or three months, every six months, depending on how I feel." (Id.)

record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original).

**II. The ALJ's credibility finding**

The ALJ found Plaintiff's allegations regarding her limitations not totally credible. (R. at 20) Plaintiff challenges both the ALJ's method in assessing Plaintiff's credibility and the adequacy of the credibility finding itself. See Plaintiff's Mem. at 15-18.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...." Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2007) (same).

Plaintiff notes that in evaluating a claimant's mental impairment an ALJ is also required to assess the claimant's limitations in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See Plaintiff's Mem. at 15; see also 20 C.F.R. § 404.1520a(c)(3).

In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Id. at *4. The ALJ's credibility finding is generally entitled to deference. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.")(citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations ...").

As an initial matter, the Court notes that the ALJ recognized his obligation to "consider all symptoms, including

pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." (R. at 18) He then summarized Plaintiff's testimony regarding her daily activities, pain, shortness of breath, side effects of medications, and functional limitations.[19] (Id.) Moreover, Plaintiff was questioned at length at the October 18, 2005, hearing regarding the above factors. See Frustaglia, 829 F.2d at 195 "The ALJ thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain in conformity with the guidelines set out in Avery regarding the evaluation of subjective symptoms.")(internal citation omitted). He asked about her prior work, (R. at 31-33), why she felt she could no longer work, (R. at 34), her medication and side effects thereof, (R. at 34, 38-39), her functional limitations, (R. at 35-36, 38), anything else she did to feel better, (R. at 39), and her daily activities, (R. at 36-38). Plaintiff's attorney questioned her as well,(R. at 39-44), inquiring about how Plaintiff slept, (R. at 39-40), how often she cried, (R. at 40), what happened when she felt nervous, (id.), what she did when she was nervous, (R.

---

[19] The ALJ stated that:

> [Plaintiff] testified as follows: She is unable to work due to the side effects of medication, fatigue, shortness of breath and pain in her knees. Her medications leave her tranquil and lax, without energy. She gets up in the morning around 11 am and sits at her kitchen table. She reads the bible throughout the day and spends a significant amount of time with her daughter. [Plaintiff] takes public transportation. Her daughter does most of the claimant's shopping and meal preparation. She uses Tylenol for her knee pain. She does not sleep well and cannot concentrate for long periods of time.

(R. at 18)

at 41), whether she had difficulty focusing, (R. at 42), and whether being in one place for a long time made her nervous, (R. at 43-44). Thus, although the ALJ's discussion of the required factors in his decision is brief, the Court finds that the factors were adequately considered. See Frustaglia, 829 F.2d at 195 ("Although more express findings, regarding ... pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence.").

The same is true with reference to the broad areas of functioning. The ALJ again recognized the need to assess the four areas of functioning. (R. at 19) (id.) He found that "[b]ased on review of the entire record ... the claimant experiences 'mild' limitation in activities of daily living; 'mild' limitation in social functioning; 'moderate' limitation in concentration/persistence/pace; and 'no' episodes of decompensation of extended duration." (Id.) While the ALJ's summary of his findings in these areas is brief, the ALJ had addressed several areas elsewhere in his decision. As noted previously, the ALJ summarized Plaintiff's testimony regarding her daily activities. (R. at 18) Touching on both Plaintiff's daily activities and social functioning, he also observed that "[w]hile the claimant testified to a limited range of daily activities, the file shows she has been able to care for a son that was involved in an automobile accident, attend church regularly, and interact well with others," (R. at 19)(internal citation omitted). As for concentration, persistence, or pace, the ALJ stated that Plaintiff's "medical condition has resulted in symptoms that include fatigue, reduced concentration and reduced attention." (R. at 17) Therefore, the Court concludes that the brevity of the ALJ's summary regarding the four broad areas of functioning does not require remand.

Turning to the ALJ's credibility finding itself, Plaintiff argues that:

> The ALJ finds the severity statements of the plaintiff to be "not credible" because: "the file shows she has been able to care for a son that was in an automobile accident, attend church regularly, and interact well with others...[.] There is evidence of non-compliance with treatment suggestions. The claimant has not sought counseling services for her depression. Her diabetes is well controlled with medication." This simple conclusory statement does not comply with the regulations and rulings for the nature of assessment required, and ignores completely all the other statements of the examining sources and of the plaintiff herself at the hearing.

Plaintiff's Mem. at 15 (first alteration in original)(internal citation omitted). However, that is not the only statement the ALJ made regarding Plaintiff's credibility. After summarizing her testimony, the ALJ observed that "[r]eview of the record as a whole ... does not support a finding of the degree of severity the claimant asserts, or a degree of severity which would preclude all work." (R. at 18) The ALJ additionally noted that Plaintiff was "not persuasive when she alleges that her impairments prevent her from work." (R. at 19) Significantly, the ALJ also stated that:

> Finally, it is noted that the claimant's date of alleged onset of disability (December 26, 2002) corresponds with the first work day after her last day of work as a foot press operator for her last employer. On inquiry at hearing, however, she acknowledged that her job did not end because of any physical or mental impairment, but because her employer went out of business. There is no suggestion that she missed any work because of her impairments. Moreover, following her lay-off, she collected unemployment insurance compensation for approximately one year (testimony): A condition of eligibility for these benefits is an acknowledgment by the claimant (/recipient) that she is ready, able, and available for work. Both the circumstances attending the end of the claimant's last employment and her subsequent

> application for and receipt of unemployment benefits undercuts [sic] the credibility of the claimant regarding her disability at that time, and generally.

(R. at 19)(footnote omitted).

The ALJ gave multiple reasons for finding Plaintiff's allegations not totally credible. He focused on the fact that her ability to take care of her son, go to church, and interact with others was inconsistent with a total inability to work, that she was noncompliant with her medication regimen, that she had not sought treatment, other than medication, for her depression, that her diabetes was well-controlled by medication, that her statements were inconsistent with the record as a whole, that she did not stop working because of her alleged disability but, rather, because her employer went out of business, and that, thereafter, she collected unemployment benefits for a year, certifying regularly that she was ready, able, and available for work. (Id.) It is clear that the ALJ complied with the requirement that he "make specific findings as to the relevant evidence he considered in determining to disbelieve [Plaintiff]." DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); see also Bazile v. Apfel, 113 F.Supp.2d 181, 187 (D. Mass. 2000)(citing DaRosa); SSR 96-7p, 1996 WL 374186, at *4 ("The determination or decision must contain specific reasons for the finding on credibility ....").

Plaintiff argues that "the ALJ makes no mention of the fact that, at the time of the plaintiff's hearing, the plaintiff's son no longer lived with her,[20] [she] attended church only once

---

[20] Regarding Plaintiff's statement that at the time of the hearing in October of 2005 Plaintiff's son no longer lived with her, see Plaintiff's Mem. at 16, the Court notes that Plaintiff has alleged disability since December of 2002, (R. at 66). Thus, even if not currently valid, the ALJ's reliance on the fact that Plaintiff was able to care for her son was valid for part of the relevant period.

weekly and testified that she could not get medical treatment other than with Dr. DePrisco because she did not have medical insurance and Dr. DePrisco's care was free." Plaintiff's Mem. at 16 (internal citations omitted). Even accepting Plaintiff's explanations as true, the other reasons given by the ALJ remain valid.

For example, regarding noncompliance, Dr. DePrisco noted in his September 2004 Medical Report that he had not been able to perform a physical examination of Plaintiff and that "a lot of [his] struggling has been [with] compliance." (R. at 160) He also stated that Plaintiff was "totally NONCOMPLIANT with suggested treatment ...," (id.), with suggested treatment for depression, (id.). Dr. DePrisco's office notes indicate that Plaintiff missed appointments, that she did not bring her medications and glucometry booklet to appointments as directed, that she did not always take her medications as prescribed, and that she did not follow up on referrals.[21] (R. at 35-36, 179, 183, 189, 190, 191, 192, 242, 243, 246, 267) On July 16, 2006, Dr. DePrisco observed that Plaintiff was "NONCOMPLIANT[.]" (R. at 163) Therefore, the Court concludes that the ALJ's statement regarding noncompliance finds support in the record.

In addition, Dr. DePrisco stated that he did not believe that Plaintiff's physical impairment would prevent her from performing work-related activities. (R. at 160) This assessment is consistent with Dr. Vitelli's notation that Plaintiff "seems to be well controlled on her medications that she is taking," (R. at 124), and "should have no problems with sitting, standing, walking, lifting, carrying, or handling objects," (id.), and with

[21] Dr. DePrisco's office notes reflect that Plaintiff stated that the reason for Plaintiff's refusal to see specialists and/or other providers was lack of money. (R. at 160, 179); see also Plaintiff's Mem. at 5, 16.

Plaintiff's counsel's argument at the October 18, 2005, hearing that Plaintiff was "disabled as a result of her psychiatric impairments and ... she also has additional medical problems, particularly the one with her knee, which does limit her ability to ambulate," (R. at 29). Accordingly, the Court finds no fault with the ALJ's statement that Plaintiff's "diabetes is well controlled with medication." (R. at 19)

Regarding inconsistencies, SSR 96-7p directs the ALJ to consider the consistency of Plaintiff's statements with other information in the record. SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). "The credibility determination by the ALJ, who observed the claimant, evaluated h[er] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia, 829 F.2d at 195. The Court has reviewed the entire record and finds that the ALJ's statement that "the record as a whole ... does not support a finding of the degree of severity the claimant asserts, or a degree of severity which would preclude all work," (R. at 18), is supported by substantial evidence.

Moreover, Plaintiff testified that she did not stop working because of her alleged disability but, rather, because the company which employed her closed. (R. at 33) She further testified that she collected unemployment benefits for approximately a year. (Id.) These facts were justifiably considered by the ALJ in determining Plaintiff's credibility. See Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (affirming decision where one reason for disbelieving claimant was fact that work stoppage was not caused by claimant's medical problems); see also id. at 1024 ("[I]n order to be eligible for

unemployment benefits, [the claimant] was required to sign documents stating that he was capable of working and seeking work. This statement is clearly inconsistent with [his] claim of disability during the same period. The ALJ assessed [the claimant's] credibility, and the resulting conclusion, that [his] claims lacked credibility, is supported by substantial evidence."); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) (affirming decision and noting that "[c]laimant quit work of her own volition rather than upon the advice of doctors"); Perez v. Sec'y of Health & Human Servs., 622 F.2d 1, 3 (1st Cir. 1980) ("[W]e are reluctant to say that a claimant's decision to hold himself out as able to work for the purpose of receiving unemployment benefits may never be considered on the issue of disability.").

The Court concludes that the ALJ properly evaluated Plaintiff's credibility and that his determination that her allegations regarding her limitations were not totally credible is supported by substantial evidence in the record. Accordingly, the Court rejects Plaintiff's second claim of error.

**Summary**

The Court finds that Plaintiff's challenges to the ALJ's evaluation of the opinion of Plaintiff's treating physician and assessment of Plaintiff's credibility are without merit. The Court further finds that the ALJ's decision is supported by substantial evidence in the record.

**Conclusion**

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Summary Judgment be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 28, 2008